UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. O'CONNOR,
    Plaintiff,

                                                  Case No. 09-10792

-vs-                                             HON. AVERN COHN

REDFORD TOWNSHIP
and
TRACY SCHULTZ KOBYLARZ,
    Defendants.
_____/

## MEMORANDUM AND ORDER
## DENYING IN PART AND GRANTING IN PART
## DEFENDANTS' MOTION TO DISMISS[1]

### I. INTRODUCTION

This is a wrongful discharge case. Plaintiff Thomas A. O'Connor (O'Connor) is suing defendants the Township of Redford, Michigan (Township), and Township Supervisor Tracey Schultz Kobylarz (Kobylarz) for terminating him as Director of Constituent Services. The complaint is in two counts: One, Violations of O'Connor's First Amendment Rights under 42 U.S.C. § 1983; and Two, Violation of Public Policy under Michigan Law. Before the Court is defendants' motion to dismiss. For the reasons that follow, the motion is DENIED as to Count One and GRANTED as to Count Two.

### II. BACKGROUND

O'Connor began his employment with the Township in 1999. For the last five

---

[1] The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

years of his employment he served as Director of Constituent Services. O'Connor campaigned for the reelection of incumbent Redford Township Supervisor Miles Handy ("Handy"). Kobylarz defeated Handy and became the new Township Supervisor.

O'Connor says that after assuming the position of Township Supervisor, Kobylarz made it known to him that his job, as Director of Constituent Services, was in jeopardy because of his activities in support of Handy. O'Connor further alleges that Kobylarz asked him to use his friendship and alliances with members of the Township Board of Trustees to get her initiatives passed, but he refused. O'Connor asserts that he also refused Kobylarz's request to ask Michigan State Representative Andy Dilllon to extend her an invitation to attend Governor Jennifer Granholm's State of the State Address, and his refusal infuriated her. On February 5, 2009, O'Connor's employment with the Township was terminated.

In the first amended complaint O'Connor claims, <u>inter alia</u>, that he was illegally terminated by the Township for exercising his First Amendment rights. Defendants say that O'Connor has failed to state a claim on which relief can be granted because (1) O'Connor's job was inherently political and he was therefore not entitled to keep his position after Kobylarz defeated her opposing candidate to be elected Township Supervisor, (2) Defendants are entitled to qualified immunity from O'Connor's 42 U.S.C. § 1983 claims, and (3) O'Connor failed to state a claim for wrongful discharge in violation of public policy.

### III. LEGAL STANDARD

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. When considering a motion to dismiss under

Fed. R. Civ. P. 12(b)(6), a district court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). "But the district court need not accept a bare assertion of legal conclusions." Tackett v. M&G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009). The purpose of Rule 12(b)(6) is to ensure that as a matter of law, if everything alleged in the complaint is true, the plaintiff is entitled to legal relief. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). While Fed. R. Civ. P. 8(a)(2) does not require a complaint to set out detailed factual allegations, in order for a complaint to survive a Rule 12(b)(6) motion to dismiss, the complaint must present (1) "enough facts to state a claim to relief that is plausible on its face," (2) "more than a formulaic recitation of a cause of action's elements," and (3) allegations that suggest a "right to relief above a speculative level." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

### IV.  ANALYSIS
### A.  Violation of First Amendment Rights

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The First Amendment protects political association as well as political expression." Buckley v. Valeo, 424 U.S. 1, 15 (1976).

The United States Supreme Court has held that termination of a public employee based on his or her political affiliation violates the First Amendment. Elrod v. Burns, 427 U.S. 347, 349 (1976)  The Supreme Court has also recognized that an exception to this

general principle exists when the position at issue is inherently political. <u>Elrod</u>, 427 U.S. at 366 (1976); <u>Branti v. Finkel</u>, 445 U.S. 507, 517 (1980).

### 1. "Inherently Political"

Defendants say that O'Connor's 42 U.S.C. § 1983 claim should be dismissed because they did not violate his First Amendment rights when they terminated him. They say he was fired for budgetary reasons and that even if he had been fired for supporting Kobylarz's opponent, his position was "inherently political" and he was therefore not entitled to the same First Amendment protections as other positions.

Defendants' claim that O'Connor was fired for budgetary reasons rather than for his political affiliation is an issue of fact for a jury. O'Connor's claim states enough facts, taken as true, to support a plausible claim that he was terminated for political reasons.

With respect to defendants' claim that O'Connor's position was inherently political, the Supreme Court in <u>Branti</u> noted that it is difficult to tell whether a particular position is inherently political. 445 U.S. at 518. The Court determined that "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered." <u>Id.</u> Whether O'Connor's position was inherently political and thus falls under the <u>Branti/Elrod</u> exception is also an issue of fact that should be determined by the jury. Assuming O'Connor's claim that his position was not inherently political is true, the claim is not subject to the <u>Branti/Elrod</u> exception and thus suggests a right to relief above a speculative level.

### 2. Kobylarz and Qualified Immunity

Kobylarz says that she is entitled to governmental immunity and thus is protected from O'Connor's First Amendment claim. The defense of qualified immunity shields

4

government officials from "liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

O'Connor says he was fired by Kobylarz because of his political affiliation with her opponent. If this is true, Kobylarz violated his First Amendment rights by terminating him for supporting the political candidate of his choice. Buckley, 424 U.S. at 15. The right to support the political candidate of one's choice is a well established federal right. Id. Therefore, O'Connor has stated a plausible claim that would preclude Kobylarz from governmental immunity.

### 3. The Township's Liability

Defendants say that even if Kobylarz's termination of O'Connor was illegal, the Township has no liability because the injuries Kobylarz inflicted were not pursuant to Township policy or custom. A municipality cannot be held liable under 42 U.S.C. § 1983 based on a respondeat superior theory. Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Municipal liability can be imposed only if the injuries are inflicted pursuant to the municipality's policy or custom. Id. To satisfy Monell, a plaintiff must "identify the policy, connect the policy to the City and show that a particular injury was incurred because of the execution of that policy." Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993). Under 42 U.S.C. § 1983, a municipality may be liable for its authorized policymakers' actions "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). A policymaker is

the final authority if his or her "decisions are final and unreviewable and not constrained by the official policies of superior officials." Waters v. City of Morristown, 242 F.3d 353, 362 (6th Cir. 2001). "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983." Pembaur, 475 U.S. at 481.

In Pembaur, a physician's clinic was indicted for fraudulently accepting payments from state welfare agencies. Id. at 469. The supervisor of county deputy sheriffs told them to follow the prosecutor's instructions regarding the physician's refusal to permit them to enter the clinic and serve capiases on two employees. Id. The prosecutor gave instructions to "go in and get" the employees; the deputies forcefully entered. Id. The county argued that the prosecutor lacked authority to establish municipal policy respecting law enforcement practices because only the sheriff could establish such policy; thus, the prosecutor's decision did not give rise to municipal liability. Id. at 484. However, the Supreme Court determined that because the sheriff and the prosecutor could establish county policy regarding law enforcement matters under appropriate circumstances and because the sheriff's office referred the matter to the prosecutor and then followed his instructions, in ordering the deputies to enter the clinic the prosecutor was acting as the final decision maker for the county, and the county may therefore be held liable under § 1983. Pembaur, 475 U.S. at 484–85. The Court held that "the policy which ordered or authorized an unconstitutional act *can be established by a single decision* by proper municipal policy makers." Id. at 484 (emphasis added).

Thus, for example, the County Sheriff may have discretion to hire and fire

employees without also being the county official responsible for establishing county employment policy.  If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability.  Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability.  This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.  *However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.*

Id. (emphasis added).

Defendants say that Kobylarz did not have the final authority to make the decision to terminate O'Connor; rather, "[h]er decision to lay off the Plaintiff has to be approved by the Township Board" (Board).  O'Connor alleges that Kobylarz did not seek approval from the Board.  As in the example the Supreme Court gave in Pembaur, if the Board delegated its power to establish final employment policy to Supervisor Kobylarz, her decision would represent Township policy and could give rise to municipal liability.  This is a question of fact.

Moreover, none of the published cases the Township cites was on a 12(b)(6) motion to dismiss.  City of St. Louis v. Praprotnik, 485 U.S. 112, 112 (1988) (went to jury); Jett v. Dallas Indep. Sch. Dist. 491 U.S. 701, 701 (1983) (same); Monell, 436 U.S. at 658 (1978) (summary judgment); Fox v. Van Oosterum, 176 F.3d 342, 344 (6th Cir. 1999) (same); Feliciano v. City of Cleveland, 988 F.2d 649, 652 (6th Cir. 1993) (same); Garner, 8 F.3d at 360 (same).

The Township is correct that O'Connor did not specifically allege in his complaint a governmental policy or custom of political discrimination.  See Rayford v. City of

7

Toledo, 1987 WL 36283 (6th Cir. Feb. 2, 1987). However, in light of Pembaur's holding that a single decision can establish policy and given the facts O'Connor has alleged, there is enough to keep the Township in as a defendant at least through discovery.

### B. Violation of Public Policy

Generally, employment relationships are terminable at will, with or without cause, "at any time for any, or no, reason." Suchodolski v. Mich. Consol. Gas Co., 412 Mich. 692, 694-95 (1982). However, there are three exceptions to this general rule that apply when "the discharge is so contrary to public policy as to be actionable though the employment is at-will." Id.; Edelberg v. Leeco Corp., 236 Mich. App. 177, 180 (1999). These exceptions apply when:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right of duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; [or] (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

Id.

The right to freedom of speech and press is clearly conferred by the Michigan Constitution: "Every person may freely speak, write, express, and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Mich. Const. Art. I, § 5 (1963).

O'Connor says that defendants violated public policy when they terminated him for exercising his freedom of speech by endorsing the political candidate of his choice. Freedom of speech is clearly conferred by the Michigan Constitution. Accordingly, O'Connor has stated a plausible claim based upon the third exception to the

Suchodolski doctrine.

However, a governmental agency is immune from tort liability if it is engaged in the exercise or discharge of a governmental function. M.C.L. § 691.1407(1) (2009). "A judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability . . . if he or she is acting within the scope of his or her judicial, legislative, or executive authority." § 691.1407(5). Courts have long held that the hiring, supervision, and discipline of a government employee is the exercise of a governmental function. Galli v. Kirkeby, 398 Mich. 527, 537 (1976). It is also well established that a wrongful discharge claim in violation of public policy sounds in tort. See Phillips v. Butterball Farms, Inc., 448 Mich. 239, 245–46 (1995).

In Mack v. City of Detroit, 467 Mich. 186, 197–203 (2000), the Michigan Supreme Court held that because governmental immunity is a characteristic of government, the party seeking to impose liability on the government has the burden of pleading in avoidance of governmental immunity. "A plaintiff pleads in avoidance of immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental . . . function." Id. at 204. The Governmental Tort Liability Act ("GTLA") enumerates six exceptions to governmental immunity that permit a cause of action to be brought against a governmental agency. M.C.L. § 691.1401 et. seq. The exceptions are causes of actions pertaining to highways, motor vehicles, public buildings, proprietary functions, governmental hospitals, and a sewage disposal event. Id.

In Thompson v. Wayne County Treasurer, 2008 WL 1986269, at *3 (Mich. Ct. App. May 8, 2008), the Michigan Court of Appeals recognized a plaintiff's claim of

wrongful discharge in violation of public policy sounded in tort and determined that the plaintiff's claim did not fit within any of the statutory exceptions to governmental immunity. The court held that because "only judicially recognized public policy, not statute, recognizes retaliatory termination in general as an actionable tort, and because that tort thus is not among the statutory exceptions to governmental immunity, retaliatory termination . . . is not actionable against a governmental agency." Id. Additionally, it determined that retaliatory discharge in violation of public policy is obviously an intentional conduct. Id. Lastly, the court held that a governmental entity cannot be held liable for the intentional torts of its employees. Id. For these reasons the court concluded that the plaintiff failed to plead a valid basis for avoiding governmental immunity in order to survive the defendant's motion for summary disposition. Id.

O'Connor says defendants' arguments must fail because Michigan's courts and legislature do not have the authority to exempt parties from liability for violating the Michigan Constitution. He asserts that the governmental immunity exceptions are in conflict with the clear language of the Constitution and should be deemed unconstitutional. He cites no authority and fails to develop an argument.

Because Kobylarz as elected Supervisor has governmental immunity and O'Connor has not pled in avoidance of immunity against the Township, he has failed to plead a valid public policy violation. This claim must be dismissed.

## V. CONCLUSION

For the reasons set forth above, the Court DISMISSES Count Two. The case shall go forward on Count One.

SO ORDERED.

        s/ Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: August 13, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 13, 2009, by electronic and/or ordinary mail.

        s/ Julie Owens
        Case Manager, (313) 234-5160