UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. O'CONNOR,

    Plaintiff,

v.                                                                                                            Case No. 09-10792

REDFORD TOWNSHIP and                                                                HON. AVERN COHN
TRACY SCHULTZ KOBYLARZ,

    Defendants.

_____/

# MEMORANDUM AND ORDER
# DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 16)

## I. Introduction

This is a wrongful discharge case. Plaintiff Thomas A. O'Connor (O'Connor) is suing defendants the Township of Redford, Michigan (Township), and Township Supervisor Tracey Schultz Kobylarz (Kobylarz) for terminating him as Director of Constituent Services. As will be explained, count one of the complaint, which claims a violation of the First Amendment under 42 U.S.C. § 1983, remains.[1] Before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion will be denied.

## II. Background

The material facts as gleaned from the record follow.[2]

---

[1] Count two claimed a violation of public policy under Michigan law.

[2] The Court has specific motion practice guidelines. The guidelines were attached to the Scheduling Order (Doc. No. 7) and are available on the Court's website at http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=89. Despite this,

O'Connor began his employment with the Township in 1999. For the last five years of his employment he served as Director of Constituent Services, a position he had held since March of 2005. O'Connor obtained the Director position when a new Township Supervisor, R. Miles Handy, III (Handy), was elected. O'Connor described his position as being responsible for community outreach regarding residential roads, sidewalks, and the Brownfield projects (projects to refurbish contaminated land in the Township.) He also received and responded to citizen complaints on a wide variety of issues, such as ordinance enforcement.

In 2008, when Handy was up for re-election, O'Connor campaigned for him and contributed to his campaign. Kobylarz, however, defeated Handy and became the new Township Supervisor.

O'Connor says that after assuming the position of Township Supervisor, Kobylarz made it known to him that his job, as Director of Constituent Services, was in jeopardy because of his activities in support of Handy. O'Connor further alleges that Kobylarz

---

neither party followed the guidelines. Defendants did not file a statement of material facts not in dispute in separately numbered paragraphs. Plaintiff did not file a response or a counter-statement of disputed facts. Neither party highlighted any of the exhibits, nor were they separately tabbed. Additionally, although not specifically prohibited, both parties attached entire deposition transcripts and all but one was provided in mini-script form. All of this made wading through the record far more difficult in a process that is already demanding. See D. Brock Hornby, Summary Judgment Without Illusions, 13 GREEN BAG 2D 272 (Spring 2010) (noting that judges say summary judgment is a "tedious and time-consuming" process and advocating lawyers and judges give it more serious attention).

As to the state of the parties' papers, because each of the law firms involved are experienced practitioners in federal court, these failures should not be condoned. However, it would be superfluous and serve no useful purpose to require compliance with the guidelines at this stage of the case. Rather, each practitioner is **SANCTIONED** in the amount of one hundred dollars ($100.00) for failing to comply, made payable to the United States District Court, forthwith. Reimbursement from the client may not be had.

asked him to use his friendship and alliances with members of the Township Board of Trustees to get her initiatives passed; he refused.  O'Connor asserts that he also refused Kobylarz's request to ask Michigan State Representative Andy Dillon to extend her an invitation to attend Governor Jennifer Granholm's State of the State Address, and his refusal infuriated her.  The State of the State address was on February 2, 2009.

On February 5, 2009, O'Connor received a letter from Kobylarz stating that due to the "economic climate" his position had been "eliminated."

On February 18, 2009, O'Connor filed a complaint in state court claiming (1) termination in violation of his First Amendment rights under § 1983, and (2) wrongful discharge in violation of public policy.  Defendants timely removed the case to federal court.

On April 20, 2009, defendants filed a motion to dismiss.  On August 13, 2009, the Court granted the motion in part, dismissing O'Connor's public policy claim.  See Memorandum and Order Denying in Part and Granting in Part Defendants' Motion to Dismiss (Doc. No. 13).  Defendants then filed the instant motion.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.

## IV. Analysis

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The First Amendment protects political association as well as political expression." Buckley v. Valeo, 424 U.S. 1, 15 (1976).

### A. Whether O'Connor's Position is Inherently Political

#### 1. The Law Generally

Defendants argue that summary judgment is appropriate because O'Connor's position was "inherently political" and therefore he cannot make out a First Amendment claim as a matter of law. The United States Supreme Court has held that termination of a public employee based on his or her political affiliation violates the First Amendment. Elrod v. Burns, 427 U.S. 347, 349 (1976). The Supreme Court has also recognized that an exception to this general principle exists when the position at issue is

4

inherently political.  Elrod, 427 U.S. at 366 (1976); Branti v. Finkel, 445 U.S. 507, 517 (1980).

The Sixth Circuit has identified four categories which identify, with reasonable certainty, positions falling into the Branti exception.  McCloud v. Testa, 97 F.3d 1536, 1557 (6th Cir.1996).  These are:

> Category One: positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted.
>
> Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions.
>
> Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors.
>
> Category Four: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

Category One includes a chief executive's cabinet secretaries and similar employees. Id. at n. 30.  Category Two encompasses those who would otherwise be Category One policymakers, except that the government has chosen not to set out the responsibilities of such a position in a statute, ordinance, or regulation.  Id. at 1557 n. 31.  Category Three includes those employees who control the lines of communication to Category One or Category Two position-holders.  Id. at 1557, n. 32 (citing Faughender v. City of North Olmstead, 927 F.2d 909, 914 (6th Cir.1991)("As political action cannot occur

5

without communication, a position that controls the lines of communication of a political actor must be inherently political."))

If a particular position falls into one of these four categories, then political affiliation is an appropriate consideration for that position and a public employee may be dismissed on that basis without violating the First Amendment. Sowards v. Loudon County, Tennessee, 203 F.3d 426, 436 (6th Cir. 2000). A government position need not, however, fit neatly within one of the four categories in order to come within the Branti/Elrod exception. Id. (citing Feeney, 164 F.3d at 318). When the position at issue is unclassified or non-merit under state law, a principle known as the Rice canon dictates that any ambiguity as to whether a position falls within one of the four McCloud categories is to be construed in favor of the government. McCloud, 97 F.3d at 1557 (citing Rice v. Ohio Dep't of Transportation, 14 F.3d 1133, 1143 (6th Cir. 1994)).

The case law is divergent. Positions found to fall within the exception are as follows: Faughender v. City of North Olmstead, Ohio, 927 F.2d 909 (6th Cir.1991): Secretary to Mayor. The Court determined that functionally, this is a type of position that involves access to confidential and political material and that political loyalty is an essential attribute of the job. Therefore, the new mayor's politically motivated refusal to rehire the former mayor's secretary did not violate the secretary's First Amendment rights.

Feeney v. Shipley, 164 F.3d 311 (6th Cir.1999): Traffic Safety Supervisor with Ohio Department of Public Safety. The Court noted that the mission of the Traffic Safety Department, a statutorily-defined department of the State's executive branch, is to prevent motor vehicle accidents, reduce the number of fatalities and injuries resulting

6

therefrom, and to administer and enforce the laws of the State of Ohio relating to the registration and operation of motor vehicles and the licensing of drivers. The Court determined that such functions are vital to the State of Ohio and are inherently political in nature.

Balogh v. Charron, 855 F.2d 356 (6th Cir. 1988): Court officer exclusively assigned to elected state trial judge. The Court relied on its findings that the officer was a confidential employee of the judge by whom he was employed who handled sensitive communications for the judge, acted as his bodyguard, and could possibly learn about and discuss case dispositions prior to their being announced to the public.

Williams v. City of River Rouge, 909 F.2d 151 (6th Cir.1990): City Attorney. The Court found significant the fact that the City Attorney could be employed by the Mayor and City Council in a way that required confidentiality, including giving legal advice, acting as the City's solicitor, handling its litigation, representing City officials in litigation, and performing some of the City's prosecutions. The Court determined that the duties inherent in the position of City Attorney indicated that a relationship of confidence and trust between the City attorney and the Mayor and Council was necessary to the effective performance of the job.

Blair v. Meade, 76 F.3d 97 (6th Cir. 1996): Purchasing Agent and Chief Financial Officer. The Court noted that this plaintiff apparently played a supervisory role in the administration of the County Judge Executive's budget as the plaintiff was responsible for paying bills, preparing claim sheets, and issuing purchase orders, and he therefore would have access to confidential and political information critical to the Judge Executive's budget decisions. The Court determined that the inherent nature of the job

7

made this plaintiff particularly well-suited to aid in policy making. The Court further determined that the Assistant Chief Financial Officer and bookkeeper to the County Judge Executive fell within the Branti/Elrod exception because although many of the assistant's duties were ministerial, the assistant was essentially the alter ego of the CFO and the assistant position involved some of the same elements of trust and confidentiality associated with a CFO.

Hoard v. Sizemore, 198 F.3d 205 (6th Cir. 1999): County Road Foreman/Garbage Coordinator. The plaintiff testified that he was responsible for maintaining the roads and supervising all 20-30 employees in the county road and garbage department. He reported directly to the county judge-executive. He also testified he decided which roads needed work and what type of work they needed. Along those lines, he maintained contact with the magistrates of the Fiscal Court. The Court noted that although the road foreman did not have significant discretionary authority as to policy matters, he served as the judge's "alter-ego" in the community with respect to road conditions.

Positions that have not fallen under the Branti/Elrod exception include the following: Heggen v. Lee, 284 F.3d 675 (6th Cir. 2002): Deputy County Sheriff. The Court noted that the Deputy's primary duties included patrolling county roads, serving arrest warrants and civil papers, taking complaints, "working" auto accidents, and transporting prisoners. The Court determined that this position did not fall within the Branti/Elrod exception despite the small size of the Sheriff's office and the fact that plaintiffs enjoyed some discretion in the performance of their duties. The Court noted that defendant had admitted that the plaintiff Deputy Sheriffs could have performed their

jobs suitably for him although they had supported his opponent in the election.

Sowards v. Loudon County, Tenn., 203 F.3d 426 (6th Cir. 2000): Jailer. The Court noted that the jailer was charged with the responsibility to receive and safely keep convicts during their transport, to file and keep safe under the sheriff's direction the process by which a prisoner is committed or discharged from jail, to determine within her discretion what type of precautions to take for guarding against escape and preventing the importation of drugs, to provide support, to furnish adequate food and bedding, to enforce cleanliness in the jail, to convey letters from prisoners to their counsel and others, and to admit persons having business with the prisoner. The Court relied on the fact that the jailer position did not involve any policy making for the day-to-day operation of the prison facility, the jailer was not in a confidential relationship with the Sheriff regarding how to run the facility, the Sheriff did not believe that political loyalty was required for the jailer to carry out her responsibilities, the jailer was simply required to follow directives, and the jailer did not have access to any confidential or political information.

Branti v. Finkel, 445 U.S. 507 (1980): Assistant Public Defender. The Court determined that the Assistant Public Defender did not fall within the Branti/Elrod exception in light of the fact that whatever policymaking occurs in the Public Defender's Office necessarily relates to the needs of individual clients and not to any partisan political interests. The Court also relied on its finding that any confidential information arising out of the various attorney-client relationships to which the assistant was bound to obtain access had no bearing on partisan political concerns.

## 2. Application

As an initial matter, defendants raised this argument in their motion to dismiss. The Court had this to say:

> With respect to defendants' claim that O'Connor's position was inherently political, the Supreme Court in <u>Branti</u> noted that it is difficult to tell whether a particular position is inherently political. 445 U.S. at 518. The Court determined that "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered." <u>Id.</u> Whether O'Connor's position was inherently political and thus falls under the <u>Branti/Elrod</u> exception is also an issue of fact that should be determined by the jury. Assuming O'Connor's claim that his position was not inherently political is true, the claim is not subject to the <u>Branti/Elrod</u> exception and thus suggests a right to relief above a speculative level.

Memorandum and Order at p. 4.

Presumably since discovery is now complete, the Court is in a better position to evaluate whether O'Connor's position is inherently political. It appears defendants contend that O'Connor's position exhibits characteristics of components of category two and category three inasmuch as they contend that in acting as a liaison between the Township Supervisor, the various departments, the Township Board and members of the public, he controlled lines of communication. Categories two and three are defined in reference to category one, which includes "positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted." <u>McCloud</u>, 369 F.3d at 1557. In turn, category two "is constructed to recognize that it may be necessary to deny First Amendment protection not just to positions at the very top of any state administrative hierarchy, but in some cases to

those occupying levels a bit farther down the hierarchy." Id. at 1557 n. 31. An example of a category two position is "a deputy secretary of labor in a state, to whom the secretary of labor has delegated the responsibility for crafting the department's annual proposed legislative agenda." Id. at 1557. As for category three, it includes employees who either "advis[e] category one or category two position-holders on how to exercise their ... authority" or "control the lines of communication" to those position-holders. Id. An example of a category three position is "a judge's law clerk or secretary." Id. Whether a particular government position falls within one of these categories, thereby making "political affiliation an appropriate consideration" for the position, is a question of law. See Garvey v. Montgomery, 128 Fed.Appx. 453 (6th Cir. 2005).

In determining whether O'Connor's position is inherently political, of relevance is the ordinance which created the department of constituent services and describes the position of Director of Constituent Services. Article IV., Section 2-81 provides:

> (a) The department of constituent services shall be responsible for the general supervisor and coordination of services rendered by the following departments: parks and recreation, senior citizens and veterans, senior citizens' housing, Dial-a-Ride, youth services, and community development. The day-to-day operations of the various departments, however, shall be the responsibility of the heads of those departments.
> (b) The head of the department of constituent services, pursuant to Act. No. 246 of the Public Acts of Michigan of 1965 (MCL 38.451 et. seq.) as amended, section 6(a), shall be designated the director of constituent services and shall be appointed by the township board. The director of the department shall be the liaison between the township board and those departments under his general supervision and will also be responsible for outreach on residential roads, sidewalk, and Brownfield projects.
> (c) The director of constituent services shall have general knowledge of the day-to-day operations of the township. The director shall have at least ten years' experience working for a municipality and be able to work well with senior citizens and youth. The director must possess previous department head experience and must be flexible to provide the supervision necessary to help the various departments function as a cohesive unit.

11

(Ord, No. 261, § 1, 3-8-05)

Also of relevance is O'Connor's and Kobylarz's descriptions of the position. O'Connor testified at deposition that he was responsible for community outreach and fielded complaints from residents to the appropriate departments. O'Connor says he reported ultimately to the Township Board. However, Koblartz testified that he was "supposed to be the liaison between the constituents and the Township Supervisor." Her testimony is contrary to the ordinance which says that the director is to act as liaison between the board and the various departments.

Having reviewed the record in light of the law, the Court is satisfied that O'Connor's position was not inherently political. Defendants have not satisfied their burden of proving that, as a matter of law, O'Connor was a confidential or policymaking employee of the Township. He did not make any policy recommendations or formations. Defendants have not shown any facts demonstrating that O'Connor's loyalty was a prerequisite "requirement for the effective performance" of his duties. Indeed, O'Connor was seen to help bridge the gap between administrations. As O'Connor puts it, his position "seems to consist of little more than funneling complaints to the appropriate departments with the power and resources to handle those complaints and [] act as a facilitator for the Board whenever they need[ed] to work with multiple departments or need[ed] more information on a particular project." O'Connor's brief at p. 8. O'Connor does not appear to have acted as the "alter ego" of the Township Board or Supervisor or engaged in confidential communications. His position as a liaison was not political, but rather apolitical. Thus, defendants are not entitled to summary judgment on this ground.

12

## B. Whether O'Connor Has Made Out A Prima Facie Case for Retaliation

Defendants also argue that even if O'Connor's position is entitled to First Amendment protection, he has failed to make out a prima facie case. To prevail on a § 1983 claim claiming a First Amendment violation, a plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir.2003). When, as here, a plaintiff alleges that a government official has retaliated against him for exercising his First Amendment rights, the second element of the Section 1983 prima facie case-that the deprivation was caused by a person acting under color of state law-is further broken down into three sub-elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." Mezibov v. Allen, 411 F.3d 712, 717 (6th Cir. 2005) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

Defendants argue that O'Connor cannot meet the causal connection element – that being laid off was motivated, at least in part, by his protected conduct. In order to meet that threshold, O'Connor must "point to specific, nonconclusory allegations reasonably linking her speech to employer discipline." Rodgers v. Banks, 344 F.3d 587, 602 (6th Cir. 2003). "[T]he nonmoving party cannot rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent." Taylor v. Keith, 338 F.3d 639, 646 (6th Cir. 2003). Put another way,

13

O'Connor must show that the defendants would not have acted as they did if O'Connor had not exercised his constitutional rights. Greene v. Barber, 310 F.3d 889, 897 (6th Cir. 2002).

Defendants, however, argue that O'Connor cannot meet this element because the record shows his job was eliminated not because of his activity, but for budgetary reasons. While defendants have proffered evidence that O'Connor's position and other positions were eliminated at the same time (that of Sanitation Foreman and Building Superintendent), there is also evidence that during her tenure, Kobylarz hired three new deputy supervisors whose positions did not exist prior to taking office. She also created and funded a new department of Leisure Services. Moreover, as counsel for defendants stated at oral argument, the Township ended the year with a $15,000.00 surplus in the budget. Based on this record, reasonable minds could differ on whether O'Connor's political affiliations and connections were the motivating factor in his job elimination. Thus, there is a fact question as to whether O'Connor's activities were causally related to the adverse action.

Moreover, O'Connor testified at deposition that Kobylarz not only knew of his association with Handy, but also told him she did not "trust" him because of it. Pl's dep. at p. 42. He also testified that Kobylarz pressured him to use his contacts to get her invited to Andy Dillon's gathering during the State of the State address. Id. at p. 48-49. When he refused, Kobylarz was upset. Id. at p. 44. Days after the State of the State address, O'Connor was informed his position was being eliminated. Moreover,

Kobylarz admitted she made the decision without approval of the Township Board.[3]
Based on this record and sequence of events, there is a question of fact as to whether there was a causal connection between his activities and the adverse action taken against him.

### C.  Whether Kobylarz is Entitled to Qualified Immunity

Kobylarz argues that she is entitled to qualified immunity and thus is protected from O'Connor's First Amendment claim.  The Sixth Circuit has explained:

> Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Pearson[v. Callahan], --- U.S. ----, 129 S.Ct. 808, 815 (2009).  Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful.  Ewolski v. City of Brunswick, 287 F.3d 492, 501 (6th Cir. 2002).  Qualified immunity " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)).  Qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.  Pearson, 129 S.Ct. at 815.

Plaintiff bears the burden of showing that defendants are not entitled to qualified

---

[3] Counsel for defendants stated at oral argument that Kobylarz had the authority to eliminate O'Connor's position and that the Township Board later ratified her decision.  The record, however, did not contain such evidence.  Subsequently, after the hearing, counsel filed Supplemental Exhibits to Defendants' Motion for Summary Judgment (Doc. No. 21).  Included in these exhibits is what appear to be minutes from a Special Meeting held by the Township Board on February 26, 2010.  As reflected in the minutes, Kobylarz requested to add a resolution to the Agenda to eliminate three positions, including O'Connor's.  The Board unanimously agreed to add the resolution and the Board voted 5-2, with Kobylarz being one of the ayes votes, for the eliminations.  Also included in the exhibits is an excerpt from the Handbook for Board of Trustees Appointed Employees which states in part that "appointees" may be "terminated at any time, with or without cause and with or without notice by an authorized department head by an authorized department head and the township supervisor or the township supervisor alone."  Assuming this provision applies to O'Connor's job elimination, which is not entirely clear, the sequence of events still present a question of fact as to whether Kobylarz's decision to "eliminate" O'Connor's position was politically motivated.

immunity. Untalan v. City of Lorain, 430 F.3d 312, 314 (6th Cir. 2005). Plaintiff must show both that, viewing the evidence in the light most favorable to her, a constitutional right was violated and that the right was clearly established at the time of the violation. Scott, 550 U.S. at 377, 127 S.Ct. 1769, 167 L.Ed.2d 686; Harrison, 539 F.3d at 517. If plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden. Moreover, to satisfy the second prong of the standard, plaintiff must show that the right was clearly established in a "particularized sense," such that a reasonable officer confronted with the same situation would have known that [the action taken] would violate that right. Brosseau v. Haugen, 543 U.S. 194, 199-200, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). In determining whether the required showing has been made, the court has discretion to decide which of the two elements to address first. Pearson, 129 S.Ct. at 818.

Chappell v. City of Cleveland, 585 F.3d 901, 907 (6th Cir. 2009)

Here, there is no dispute that terminating a public employee based on their political affiliation violates the First Amendment. As to whether it the right was "clearly established," defendants argue that given the state of the law on the Branti/Elrod exception, Kobylarz could not reasonably know that terminating O'Connor would violate the First Amendment. While this argument has some intellectual appeal, the record shows that Kobylarz was quite vocal about wanting O'Connor to use his political connections to assist her and that she was very upset when he refused. In light of the record, the Court is not prepared to say that Kobylarz is entitled to qualified immunity.

### D. The Township's Liability

Defendants also argue that the Township cannot be liable because Kobylarz is not liable. Given the Court's determination that summary judgment as to Kobylarz is not appropriate, it follows that the Township is also not entitled to
o summary judgment.

16

## V. Conclusion

For the reasons stated above, defendants' motion for summary judgment is DENIED.

SO ORDERED.

                                              S/Avern Cohn
                                              AVERN COHN
                                              UNITED STATES DISTRICT JUDGE

Dated: June 30, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 30, 2010, by electronic and/or ordinary mail.

                                              S/Julie Owens
                                              Case Manager, (313) 234-5160